Slip Op. 13–150

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│                                      │
│  SNAP-ON, INC.,                      │
│                                      │
│          Plaintiff,                  │
│                                      │
│               v.                     │
│                                      │
│  UNITED STATES,                      │
│                                      │
│          Defendant.                  │
│                                      │
└─────────────────────────────────────┘
```

Before: Donald C. Pogue,
        Chief Judge

Court No. 13-00238

[granting the Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment]

Dated:  December 16, 2013

     Bruce J. Casino and J. Scott Maberry, Sheppard Mullin Richter & Hampton, LLP, of Washington, DC. for Snap-on, Inc.

     Tara K. Hogan, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC for Defendant.  Also on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel on the brief was Joanna Theiss, Office of Import Trade Administration, Department of Commerce, of Washington, DC.

## OPINION

**Pogue, Chief Judge:**  In this action, Plaintiff, Snap-on,

Inc. ("Snap-on"), a U.S. importer of goods containing aluminum

extrusions manufactured in China, seeks an order enjoining the
Department of Commerce from requiring, and U.S. Customs and
Border Protection from collecting, 374.15% "all others" cash
deposits and countervailing duties for Plaintiff's entries.
Plaintiff contends that the "all others" rate applicable to its
entries should be 137.65% (the "revised rate") in accordance
with this court's judgment in <u>MacLean-Fogg v. United States</u>, 36
CIT _, 885 F. Supp. 2d 1337 (2012)("<u>MacLean-Fogg IV</u>").[1]

The court has jurisdiction over Plaintiff's claim under 28
U.S.C. § 1581(i)(2006).

Currently before the court are Defendant's Motion to
Dismiss and for Summary Judgment, ECF No. 16, and Plaintiff's
Motion for Summary Judgment, Motion for Writ of Mandamus,
Declaratory Relief, or Preliminary Injunction, ECF No. 18.  By
its motion, Defendant asserts that, as a matter of law,
Plaintiff cannot establish entitlement to the revised 137.65%
rate.  In its cross-motion, Plaintiff asserts that it is
entitled to the revised rate and thus the court should grant its
request for a writ of mandamus, declaratory judgment, and
permanent injunction.

---

[1] This case is currently on appeal.

As explained below, because there was no injunction suspending the liquidation[2] of Plaintiff's entries in the litigation challenging the 374.15% rate, or any subsequent administrative review, and because Plaintiff did not participate in any of these proceedings, Section 561A(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(c)(1)(2006),[3] requires that Defendant's motion be granted.

## BACKGROUND

The duty rates at issue stem from Commerce's April 27, 2010 initiation of antidumping ("AD") and countervailing duty ("CVD") investigations of certain aluminum extrusions from the People's Republic of China ("China" or "PRC"). Statement of Stipulated Facts ("Stipulated Facts"), ECF No. 15 at ¶¶ 6-7; see also Aluminum Extrusions from the People's Republic of China, 75 Fed. Reg. 22,114 (Dep't Commerce Apr. 27, 2010) (initiation of countervailing duty investigation); Aluminum Extrusions from the People's Republic of China, 75 Fed. Reg. 22,109 (Dep't Commerce Apr. 27, 2010) (initiation of antidumping duty investigation). In that investigation, Commerce, on April 4, 2011, issued a

---

[2] Liquidation is "the final computation or ascertainment of duties on entries [. . .]" 19 C.F.R. §159.1 (defining liquidation).

[3] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

final CVD determination that set the CVD rate for those
exporters and producers not individually investigated (the "all
others" rate)[4] at 374.15%. Stipulated Facts at ¶ 12; see also
Aluminum Extrusions from the People's Republic of China, 76 Fed.
Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirmative
countervailing duty determination).

      Snap-on's merchandise was entered after Commerce's
final CVD determination --- between May 31, 2011, and March 12,
2012. Stipulated Facts at ¶¶ 14, 16-24, 30.  The merchandise
constitutes ten entries of goods manufactured by Zhangjiagang
GuPai Aluminum Industry Co. ("GuPai").  Although Commerce's
final affirmative countervailing determination was challenged in
this court, neither GuPai nor Snap-on participated in the
investigation as a named respondent or otherwise qualify for a
separate rate for entries of subject merchandise, Stipulated
Facts at ¶ 9, nor was either a party to the court review.

      Snap-on also did not deposit estimated countervailing
duties on their entries. Stipulated Facts at ¶ 24.  Rather, the
entries were designated as CBP Entry Type 01. Id.[5]  Customs did

---

    [4] See 19 U.S.C. §§ 1673b(d), 1673d(c)(5).
    [5] Entry Type 01 is the designated category for "free and
dutiable" goods.  Tianjin Tiancheng Pharm. Co. v. United States,
29 CIT 256, 273, 366 F. Supp. 2d 1246, 1261 (2005).  Entry Type
03 is the category for goods subject to antidumping duties. Tak
Yuen Corp. v. United States, 29 CIT 543, 547 (2005).  It is
unclear whether Snap-on chose to enter the goods as Type 01 on
(footnote continued)

not accept the Type 01 designation[6] and instructed Snap-on to

obtain a scope ruling from Commerce for their aluminum extrusion

imports. Id. at ¶ 29.[7]

          Fifteen months after its final determination, on July,

10, 2012, Commerce initiated the first administrative review of

the CVD and AD orders on aluminum extrusions from China.

Initiation of Antidumping and Countervailing Duty Administrative

Reviews and Requests for Revocation in Part, 77 Fed. Reg. 40,565

(Dep't Commerce July 10, 2012) (initiation of antidumping and

countervailing duty administrative reviews and request for

revocation in part).[8]  Consistent with its initiation notice,

---

the basis of a good faith belief that the goods were not subject
to the AD and CVD orders on aluminum extrusions.
          [6] Addressing these entries, on February 14, 2012, CBP
emailed Snap-on's customs broker, UTi, to request that entries
with aluminum extrusions be filed as paper entries because such
entries were potentially subject to antidumping and
countervailing duties. Stipulated Facts at ¶ 27.  CBP further
specified on February 15, 2012, that they were in the process of
confirming the classification and AD/CVD determination for
Plaintiff's entries and hence, would "allow for type 01 entries
and the furniture parts classification." Id. at ¶ 29 (citing
email from Senior Import Specialist Michael Carriere on February
15, 2012).
          [7] Snap-on, however, did not seek a scope ruling on its
merchandise.
          [8] The U.S. system for assessing AD and CVD duties is
described as retrospective.  (The process for collection of cash
deposits and liquidation of entries is essentially the same for
entries subject to AD and CVD duties.  For a more complete
discussion of the process for assessing AD duties, see Sioux
Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046-48
(Fed. Cir. 2012).)  Briefly, an AD or CVD margin is established
during the investigation, and that margin becomes the cash
                                        (footnote continued)

Commerce instructed Customs to "assess countervailing duties on merchandise entered, or withdrawn from warehouse, for consumption at the cash deposit or bonding rate in effect on the date of entry," for all firms for whom no review request was made.[9]  Stipulated Facts at ¶ 34 (citing <u>Automatic Liquidation</u>

---

deposit rate for the year following the conclusion of the investigation, as published in the AD or CVD order.  On the first year anniversary of the order, interested parties may request an administrative review.  The review establishes a new margin based on actual entries during the prior year.  This margin becomes the assessment rate for merchandise entered during the year prior to the review and the cash deposit rate for merchandise entered during the year following the review. Entries entered during the previous year are then liquidated at the assessment rate established in the review. If the assessment rate is lower than the cash deposit rate for the entries liquidated, then the importer receives a refund.  If the assessment rate is higher than the cash deposit rate, then the importer owes additional duties.  On the one-year anniversary of the first review, a second review can be requested and the process is repeated. <u>See</u> 19 U.S.C. § 1675(a)(1)-(2).

[9] The entries from GuPai are also subject to antidumping duties which are not at issue in this case. Stipulated Facts at ¶ 34.  Consistent with the initiation of the first administrative review of the AD order, Commerce issued instructions to CBP to liquidate entries for firms listed in the instructions. GuPai was not listed and therefore, was not subject to the liquidation. <u>Id.</u> (relying on <u>Non-Review liquidation Instruction for Aluminum Extrusions from the People's Republic of China for the Period 11/12/2010 through 4/30/2012</u>, Message No. 2212302, A-570-967, POR Nov. 12, 2010- Apr. 30, 2012 (July 27, 2012), <u>available at</u> http://addcvd.cbp.gov/detail.asp?docID=2212302&qu=2212302 (last visited Dec. 10, 2013)).  Because the GuPai entries are suspended under the AD administrative review, they are effectively suspended from liquidation for purposes of the CVD order.  In addition, a July 16, 2013 order, ECF No. 12, granted a preliminary injunction suspending all liquidation pending the decision in this case.

Instructions for Aluminum Extrusions from the People's Republic

of China for the Period 09/07/2010 through 12/31/2011, Message

No. 2209305, C-570-968, POR Sept. 07, 2010-Dec. 31, 2011 (July

27, 2012), available at

http://addcvd.cbp.gov/detail.asp?docID=2209305&qu=2209305 (last

visited Dec. 10, 2013)).  Because no request was made for review

of GuPai, the GuPai entries entered prior to initiation of the

first administrative review became subject to liquidation at the

374.15% rate that was in effect on the date of entry.[10]

---

[10] See 19 C.F.R. § 351.212(c):

Automatic assessment of antidumping and countervailing
duties if no review is requested.

(1) If the Secretary does not receive a timely
request for an administrative review of an order
(see paragraph (b)(1), (b)(2), or (b)(3) of §
351.213), the Secretary, without additional
notice, will instruct the Customs Service to:

(i) Assess antidumping duties or countervailing
duties, as the case may be, on the subject
merchandise described in § 351.213(e) at rates
equal to the cash deposit of, or bond for,
estimated antidumping duties or countervailing
duties required on that merchandise at the time
of entry, or withdrawal from warehouse, for
consumption; and

(ii) To continue to collect the cash deposits
previously ordered.

(2) If the Secretary receives a timely request
for an administrative review of an order (see
paragraph (b)(1), (b)(2), or (b)(3) of §
351.213), the Secretary will instruct the Customs
                                    (footnote continued)

Prior to any liquidation, however, on December 20, 2012, Commerce notified CBP that it had amended its final CVD determination consistent with MacLean-Fogg IV and instructed CBP to collect an all others cash deposit rate of 137.65% for all shipments of aluminum extrusions from the PRC entered on or after December 10, 2012. Id. at ¶ 39 (citing Notice of an Amended Final Determination in the Countervailing Duty Investigation of Aluminum Extrusions from the People's Republic of China, Message No. 2355304, C-570-968, POR Jan. 01, 2009-Dec. 31, 2009 (Dec. 20, 2012), available at http://addcvd.cbp.gov/detail.asp?docID=2355304&qu=2355304 (last visited Dec. 10, 2013)).

Also, on June 10, 2013, Commerce issued the preliminary results of its Countervailing Duty Administrative Review of the First Review Period, which stated that CBP would be instructed to collect cash deposits of estimated countervailing duties at the "most recent" applicable "all others" rate. Id. at ¶ 43 (citing Aluminum Extrusions from the People's Republic of China, 78 Fed. Reg. 34,649, 34,652 (Dep't Commerce June 10, 2013) (preliminary results of the

---

Service to assess antidumping duties or countervailing duties, and to continue to collect cash deposits, on the merchandise not covered by the request in accordance with paragraph (c)(1) of this section. . . .

countervailing duty administrative review for the period Sept. 7, 2010 through Dec. 31, 2011).

Thereafter, Commerce, on June 28, 2013, initiated the second administrative review of the CVD order in effect on aluminum extrusions from the PRC for the period of January 1, 2012, to December 31, 2012 and the AD order in effect on aluminum extrusions from the PRC for the period of review May 1, 2012 through April 30, 2013. Id. at ¶ 45-46.  Consistent with the initiation of the second administrative review, on July 16, 2013, Commerce issued liquidation instructions for entries made by all firms except those subject to the review.  Id. at ¶ 48 (citing Automatic Liquidation instructions for Aluminum Extrusions from the People's Republic of China for the Period 01/01/2012 through 12/31/2012, Message No. 3197305, C-570-968, POR Jan. 01, 2012–Dec. 31, 2012 (July 16, 2013), available at (last visited Dec. 10, 2013)).  Once again, no request was made for review of the entries from GuPai, and the GuPai entries became subject to liquidation under the CVD order.[11]

However, as referenced above, Commerce amended the final determination in the CVD investigation, reducing the all others rate from 374.15% to 137.65% in response to MacLean-Fogg

---

[11] Plaintiff's entries again remained unliquidated because of a suspension order by Commerce in the parallel AD case. Stipulated Facts at ¶ 35.

IV.  That decision followed several rounds of litigation.

First, in MacLean-Fogg I, importers of aluminum extrusions from

China challenged the all others CVD rate. MacLean-Fogg v. United

States, 36 CIT _, 836 F. Supp. 2d 1367 (2012).  To calculate the

all others rate, Commerce had excluded the weighted average of

voluntary respondents' rates and used the weighted average

adverse facts available rate of the uncooperative mandatory

respondents.[12] Id. at 1375 (explaining Commerce's authority to

use sampling to calculate all others rate under 19 U.S.C. §

1677f-1(e), as limited by the reasonableness criterion under 19

U.S.C. § 1671d(c)(5)(A)(ii)).  The court held that Commerce's

choice of methodology was reasonable but its calculation process

was not and remanded the case for recalculation or further

explanation. Id. at 1376.  In MacLean-Fogg II, on a motion to

seek reconsideration of the court's opinion in MacLean-Fogg I,

the Plaintiffs claimed that the court should also address

Commerce's preliminary rate determination. MacLean-Fogg v.

United States, 36 CIT _, 853 F. Supp. 2d 1253 (2012).  The

motion was granted in part, holding that the preliminary rate

determination would be reviewed for reasonableness upon

---

[12] Commerce calculated the all others rate by using the
weighted average of the rates for the three mandatory
respondents, which Commerce in turn had calculated by resorting
to adverse facts available. MacLean-Fogg I, 836 F. Supp. 2d at
1371. See 19 U.S.C. § 1677e (authorizing resort to adverse facts
available for respondents' lack of cooperation).

consideration of the remand results. Id.  In MacLean-Fogg III,

the Court reviewed Commerce's remand results.  Finding that

Commerce used the same method in calculating the all others CVD

rate, the court remanded again for recalculation or for further

explanation as to whether the rate was punitive. Maclean-Fogg v.

United States, 36 CIT _, 853 F. Supp. 2d 1336, 1343 (2012).  In

Maclean-Fogg IV, Commerce recalculated the all others CVD rate,

finding the preliminary rate of 137.65% to be the appropriate

rate.  The CIT affirmed. MacLean-Fogg IV, 885 F. Supp. 2d at

1343.  The Court found that the application of this rate was

reasonable and remedial given the lack of information on the

record that Commerce could use in making the all others

calculation. Id. at 1342.

        Subsequent to the court's decision in Maclean-Fogg IV,

on May 31, 2013, Snap-on received a Notice of Action from CBP

indicating that Snap-on owed CVD duties at a rate of 374.15% for

the ten entries at issue. Stipulated Facts at ¶ 42.  Because all

of the entries were entered prior to December 10, 2012 – the

date on which the amended final determination rate of 137.65%

went into effect – the Notice of Action indicates that the

137.65% rate affirmed in MacLean-Fogg IV would not be applied to

entries entered prior to the effective date.  Specifically, the

Notice of Action apprises Snap-on of the duties owed on its

entries and of the fact that interest will accrue so long as

such duties go unpaid.  In response to the Notice of Action from CBP, Snap-on filed its complaint in this action, claiming that the 374.15% rate could not be applied to its entries because the rate had been held contrary to law. Verified Compl., ECF No. 2.

Specifically, Plaintiff's Amended Complaint challenges Commerce's failure to instruct Customs to collect cash deposits at a rate of 137.65% for entries entered prior to December 10, 2012. First Am. Compl. ¶¶ 39–40, ECF No. 21.  This cause of action can be read as a claim for declaratory judgment regarding the valid cash deposit rate for Snap-on's entries or, alternatively, as a claim for an injunction or writ of mandamus requiring Commerce to instruct Customs to apply the 137.65% rate. Cf. Jilin Henghe Pharm. Co. v. United States, 28 CIT 969, 342 F. Supp. 2d 1301 (2004), judgment vacated as moot, 123 Fed. App'x 402 (Fed. Cir. 2005); Decca Hospitality Furnishings, LLC v. United States, 30 CIT, 357, 427 F. Supp. 2d 1249 (2006).[13]  In

---

[13] Although Defendant challenged the Court's jurisdiction over the first count in Plaintiff's original complaint, Plaintiff's First Amended Complaint omits that count. See Defendant's Motion to Dismiss and Motion for Summary Judgment, at 9–11; First Am. Compl.  Several cases discuss this court's jurisdiction in this context. See, e.g. Consol. Bearings Co. v. United States, 348 F.3d 997, 1002–03 (Fed. Cir. 2003) ("[A]n action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results. Thus, Consolidated challenges the manner in which Commerce administered the final results. Section 1581(i)(4) grants jurisdiction to such an action."); Canadian Wheat Bd. v. United

(footnote continued)

brief, Plaintiff claims that the 374.15% rate is contrary to law following MacLean-Fogg IV, and that its entries should be subject to the 137.65% rate.


## STANDARD OF REVIEW

Where the Court has jurisdiction pursuant to 28 U.S.C. § 1581(i), it will "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see 28 U.S.C. § 2640(e).


## DISCUSSION

I.   Suspension of Liquidation

In general, when a dumping margin established in a CVD investigation or review is challenged in this court, a preliminary injunction is entered suspending liquidation of entries subject to the challenged margin. See 19 U.S.C. § 1516a(c)(2); SKF USA Inc. v. United States, 28 CIT 170, 316 F.

---

States, 32 CIT 1116, 1125, 580 F. Supp. 2d 1350, 1360 (2008) (noting that the Federal Circuit has "instructed [the CIT] to 'look to the true nature of [an] action'" when considering jurisdiction) (quoting Norsk Hydro Can. Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (alteration in original)).

Supp. 2d 1322 (2004).[14]  If litigation results in court approval

of a revised rate, all entries for which liquidation was

suspended pursuant to court order and section 1516a(c)(2), and

all entries that occur after publication of notice of the court

decision in the Federal Register, are subject to liquidation at

the revised rate. See 19 U.S.C. § 1516a(e).  The same is not

true, however, for other entries prior to notice of the court

decision.  Rather, the statute specifically provides that

"[u]nless liquidation is enjoined by the court under

[§ 1516a(c)(2)] entries of merchandise . . . shall be liquidated

in accordance with the determination of [Commerce], if they are

entered . . . on or before the date of publication in the

Federal Register by [Commerce] of a notice of a decision of the

[CIT] . . . not in harmony with that determination." 19 U.S.C. §

1516a(c)(1).  These provisions have led to some confusion

regarding when Commerce may liquidate entries at a rate that has

been held contrary to law by the court, and this issue has been

addressed in the "Laclede line"[15] of cases, to which we now turn.

---

[14] Suspension of liquidation preserves litigants' right to
judicial review by preventing Customs's action which could moot
a dispute. Zenith Radio Corp. v. United States, 710 F.2d 806,
810-11 (Fed. Cir. 1983).

[15] The Laclede line includes Laclede Steel Co. v. United
States, 20 CIT 712, 928 F. Supp. 1182 (1996); Jilin, 28 CIT 969,
342 F. Supp. 2d 1301 (2004); and Tembec, Inc. v. United States,
30 CIT 1519, 461 F. Supp. 2d 1355 (2006), judgment vacated, 31
CIT 241, 475 F. Supp. 2d 1393 (2007).

II.   The Laclede line of Cases

        The Laclede line of cases "stand[s] for the
established principle that an invalid antidumping determination
cannot serve as a legal basis for the imposition of antidumping
duties." Andaman Seafood Co. v. United States, 34 CIT _, 675 F.
Supp. 2d 1363, 1369 (2010).

        In Laclede Steel, 928 F. Supp. 1182, the plaintiff had
challenged a 6.21% rate and the court had found that rate
contrary to law, approving a revised rate on remand; however,
while the challenge to the 6.21% rate was underway, Commerce
initiated an administrative review that did not include the
plaintiff.  Therefore, the plaintiff's entries became subject to
liquidation at the 6.21% rate pursuant to 19 U.S.C. §
1516a(c)(1) and 19 C.F.R. § 353.22(e) (1995). Laclede Steel, 928
F. Supp. at 1184-85.  The plaintiff sought an injunction to
prevent liquidation at the 6.21% rate. Id.  Commerce asserted
that it had implemented the court's decision invalidating the
6.21% rate for all future entries, pursuant to Timken Co. v.
United States, 893 F.2d 337 (Fed. Cir. 1990), but that
merchandise entered or withdrawn during the pendency of appeal
was subject to the original rate pursuant to 19 U.S.C.
§ 1516a(a)(1). Laclede Steel, 928 F. Supp. at 1186-87.  The
court disagreed with Commerce, finding that the court's judgment
had established the plaintiff's rate and, the plaintiff was

"simply asking that this Court's judgment be given its full effect with respect to it." Id. at 1187.  Therefore, the court held that with regard to a party for whom a judgment was final and conclusive – i.e., not subject to appeal to the court of appeals – the entries should be liquidated pursuant to 19 U.S.C. § 1516a(e), in accordance with the court's decision. Id. at 1188.

Jilin, 342 F. Supp. 2d 1301, contained very similar facts to Laclede Steel.  The plaintiff had participated in a challenge to a dumping margin that resulted in the court's invalidation of the original margin.  Id. at 1303.  Though plaintiff was originally a party to the third administrative review, the request for review was withdrawn, and Commerce rescinded the review as to plaintiff. Id. at 1304.  Commerce subsequently issued liquidation instructions for those entries entered between the second and third administrative reviews, which instructed Customs to liquidate at the cash deposit rate in effect at the time of entry. Id.  The cash deposit rate in effect at the time of entry was the original rate invalidated by the court.

The Jilin court relied on Laclede Steel to hold that the decision invalidating the original rate was "final and conclusive as to whether [plaintiff] was properly included in the antidumping order on bulk aspirin from China; [sic] once

that decision became final.  Commerce was bound to follow it."
Id. at 1309.  The Jilin court went on to state that "[o]nce
Commerce's final antidumping determination has been invalidated,
it cannot serve as a legal basis for the imposition of
antidumping duties on [plaintiff's] entries." Id. at 1309-10.

        Finally, in Tembec, 461 F. Supp. 2d 1355, a three
judge panel of this court applied reasoning similar to Laclede
Steel and Jilin in the context of an appeal to a North America
Free Trade Agreement ("NAFTA") panel.  In particular, the Tembec
court read the statutes related to suspension of liquidation
upon appeal to a NAFTA panel, 19 U.S.C. § 1516a(g)(5)(B)-(C), to
preclude liquidation of entries entered prior to a NAFTA panel
review in a way that was inconsistent with the panel decision.
Tembec, 461 F. Supp. 2d at 1364-67.

        Thus, the court has consistently held that when a
party secures a right to a revised rate through judicial review,
all unliquidated entries of that party which are subject to the
revised rate must be liquidated at that rate regardless of
whether entry occurred before or after judicial review.
Furthermore, as noted above, a determination that is found to be
contrary to law cannot be the basis of a duty assessment with
respect to the prevailing litigant.

III. <u>Plaintiff's Waiver Issue</u>

Here, however, the <u>Laclede</u> line of cases does not support Plaintiff's argument that the 374.15% rate, because it is contrary to law following the date of the court's decision, cannot be a valid assessment or cash deposit rate with respect to Plaintiff's prior entries. This is true because, before applying the <u>Laclede</u> reasoning, the Plaintiff must show that it has a right to the 137.65% revised rate affirmed in <u>MacLean-Fogg IV</u>. On the facts of the <u>Laclede</u> line, the plaintiffs suing to enforce the court's decision had an established right to the revised rate because they were parties to the litigation in which the revised rate was affirmed. See, e.g., <u>Jilin</u>, 342 F. Supp. 2d at 1309 ("The decision in <u>Rhodia II</u> was final and conclusive as to whether Jilin was properly included in the antidumping order on bulk aspirin from China; [sic] once that decision became final."); <u>Decca</u>, 427 F. Supp. 2d 1249 (ordering Commerce to collect the plaintiff's revised cash deposit, as affirmed by the CIT, while the case was pending before the CAFC). Therefore, the <u>Laclede</u> line of cases turned on the fact that the court had adjudicated the rights of the plaintiff in a prior case, and Commerce was bound to uphold those rights.

In this case, the Government asserts that Snap-on does not have any right to the 137.65% margin. Thus, unlike the <u>Laclede</u> line, this case does not present the question of whether

the plaintiff should receive the benefit of an earlier judgment

rendered in its favor.  Rather, this case raises the prior,

threshold question of whether a recipient of the all others rate

should receive the retrospective benefit of a judgment rendered

in a case to which the recipient was not a party.  If the answer

to this threshold question is yes, then the <u>Laclede</u> line is

relevant, but a <u>Laclede</u> analysis cannot be conducted without

answering the logically prior question.  A consideration of that

prior question reveals that the Plaintiff has waived any right

to the 137.65% rate.

Plaintiff has waived any right to the 137.65% rate

because it did not participate in the litigation challenging the

investigation rate or any subsequent administrative reviews or

assert a private right of action in any manner contemplated by

the statute.  The statute specifically provides that Commerce

will liquidate entries at the cash deposit rate in effect at the

time of entry for those entries entered prior to notice of a

decision, if such entries are not suspended by court order. 19

U.S.C. § 1516a(c)(1); <u>see</u> 19 C.F.R. § 351.212(c)(1).  As a

result of this statutory provision, when a respondent does not

join litigation, and where liquidation of its entries is not

suspended by court order,[16] such entries may be liquidated in accordance with instructions that are not affected by the notice of a revised rate pursuant to a court decision.

The statute provides two pathways for importers in Plaintiff's situation to challenge a CVD order in a way that insures retrospective application of a correct rate — a challenge to the investigation and a challenge to the administrative review —  and it is the failure of Plaintiff to properly use these mechanisms that undermines both the legal and equitable arguments offered in favor of its motion.  While this case derives from a challenge to an investigation, the extent of a party's private right to a rate has been clearly articulated in the context of administrative reviews.

The benefit from lower CVD rates calculated in an administrative review or subsequent judicial review must be obtained by participating in the review processes, which is intended as the proper forum for challenging erroneous rate determinations. See 19 U.S.C. § 1675(a)(2)(C) (authorizing periodic administrative reviews); 19 C.F.R. § 351.213(b) (permitting a domestic interested party to request review); see

---

[16] Contrary to Plaintiff's argument, suspension pursuant to court order in this action does not cure Plaintiff's failure to obtain suspension by court order under MacLean-Fogg.  But the suspension here does not render Plaintiff a party to MacLean-Fogg.

<u>also</u> 19 U.S.C. § 1677(9)(A) (defining "interested party" to
include U.S. importer of affected merchandise).  Barring such
participation in an administrative review, the relevant
regulation provides for automatic assessment of the importer's
entries "at rates equal to the cash deposit of . . . estimated .
. . countervailing duties required on that merchandise at the
time of entry."  19 C.F.R. § 351.212(c)(1)(i).

        Plaintiff argues that 19 U.S.C. §§1516a(c)(2) and
(e)(2) entitle it to the lower rate because the contested
entries were covered by the Department's determination that was
challenged and invalidated in <u>MacLean-Fogg IV</u>.  Pl's Reply at 9,
ECF No. 24.  This misconstrues what it means for an entry to be
"covered" by a determination and ignores the Plaintiff's failure
to avail itself of the proper administrative remedy by
challenging the all others rate or participating in the
administrative review.  It is well established that a party who
does not participate in an administrative review does not have a
right to any rate calculated in the review. <u>See</u> <u>Consol.</u>
<u>Bearings</u>, 348 F.3d at 1005-06 ("[19 U.S.C. § 1675(a)(2)(C)]
requires Commerce to apply the final results of an
administrative review to all entries covered by the review.  If
the review did not examine a particular importer's transaction,
then that importer's entries enjoy no statutory entitlement to
the rates established by the review. The 'entries' must be

'covered by the determination' to gain entitlement to the review's results as the 'basis for the assessment' of duties.") (quoting 19 U.S.C. § 1675(a)(2)(C) (2000)); United States v. ITT Indus., Inc., 28 CIT 1028, 1030, 343 F. Supp. 2d 1322, 1325 (2004) ("If an interested party fails to request an administrative review, Commerce generally directs Customs to liquidate merchandise at the cash deposit rates in effect at the time the merchandise entered the United States, which rate is published in the Federal Register as the 'all others' cash deposit rate, unless the party received an individual rate in the original investigation." (internal citations omitted)).

Thus, because Snap-on did not participate in a challenge to the investigation rate as applied to its entries when it had the opportunity to do so, or during any administrative review,[17] it cannot benefit from the revised rate established for those entries that are the subject of the

---

[17] See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 78 Fed. Reg. 25,423, 25,424 (Dep't Commerce May 1, 2013) (announcing opportunity to seek review of entries for the period of January 1, 2012, to December 31, 2012); Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 77 Fed. Reg. 25,679, 25,680 (May 1, 2012) (announcing opportunity to seek review of entries for period of September 7,2010, to December 31, 2011).

litigation regarding those rates.[18]  Contrary to Plaintiff's

assertion, <u>see</u> Plaintiff's Motion for Summary Judgment at 12-13,

the <u>Laclede</u> line of cases does not extend the applicability of

the automatic assessment regulation under 19 C.F.R. § 351.212(c)

to importers who do not participate in the administrative review

or litigation addressing the CVD investigation, and Plaintiff

does not question the validity of 19 C.F.R. § 351.212(c).[19]  It

follows that Plaintiff is not entitled to the 137.65% revised

---

[18] Plaintiff relies on the court of appeals decision in
<u>Shinyei Corp. v. United States</u>, 355 F.3d 1297 (Fed. Cir. 2004),
for the proposition that participation in an administrative
review is not a necessary prerequisite for its section 1581(i)
challenge to Commerce's liquidation instructions in this action.
But <u>Shinyei</u>'s recognition of this court's jurisdiction to hear
an Administrative Procedure Act challenge to Commerce's
liquidation instructions – like this Court's recognition of its
jurisdiction over Plaintiff's  challenge here – does not
establish Snap-on's substantive right to the revised rate
established in <u>MacLean-Fogg</u> for entries prior to judgment in
that case.

[19] Plaintiff's citation of <u>Asociación Colombiana de
Exportadores de Flores v. United States</u> ("<u>Ascoflores</u>"), 916 F.2d
1571 (Fed. Cir. 1990), is also unavailing.  In that case, the
plaintiff successfully challenged in the CIT the dumping margin
in the underlying AD order.  <u>Id.</u> at 1575-76.  The subsequent
administrative review would not have addressed the issue in
dispute, i.e., the validity of the calculated dumping margin in
the AD order, but rather would have addressed only  the rates
calculated for the subsequent period of review. <u>Id.</u>
Accordingly, the Federal Circuit found that the futility
exception to the exhaustion requirement permitted the plaintiff
to seek a reduced dumping margin in the AD order even though the
plaintiff did not request an administrative review of its
subsequent entries. <u>Id.</u>  By contrast, Plaintiff did not
participate in <u>MacLean-Fogg IV</u>, which is the principal case in
which the <u>Ascoflores</u> rule could have applied to allow Plaintiff
to seek relief.  Thus, <u>Ascoflores</u> is inapposite to Plaintiff's
situation.

rate in accordance with this court's judgment in Maclean-Fogg
IV, and Commerce did not act contrary to law by instructing
Customs to liquidate Plaintiff's entries at the 374.15% all
others CVD rate.[20]

Plaintiff also argues that equity strongly supports
granting its motion, since failing to do so would allow the
application of a CVD rate known to be unlawful as a result of
the Department's own determinations in response to MacLean-Fogg
III and IV.  Pl's Reply at 10.  This argument ignores the fact
that a CVD rate can only be challenged by the process laid out
in 19 U.S.C. § 1675(a)(2)(C) and 19 C.F.R. § 351.213(b).
Retrospective relief for a CVD rate that is later found to be
improper is only available to parties for whom liquidation has
been properly suspended by participation in this process.  The
fact that Snap-on's entries were not liquidated for other
reasons unrelated to the MacLean-Fogg challenge places Snap-on
in the same legal position as any other importer during this
period that did not challenge the CVD and was therefore subject

---

[20] Contrary to the implication of Plaintiff's argument,
collateral estoppel does not apply here because the issue in
this case – whether Snap-on is entitled to a lower rate despite
its non-participation in the investigation and subsequent
litigation and despite automatic assessment under 19 C.F.R. §
351.212(c) – was not presented in MacLean-Fogg IV.  Cf. Consol.
Textiles, Inc. v. United States, 28 CIT 1304, 1307-08, 346 F.
Supp. 2d 1290, 1293 (2004) (listing factors required for
collateral estoppel).

to the 374.15% rate.[21]  Granting Snap-on's motion would offer the
Plaintiff a benefit that its conduct – in failing to participate
in either MacLean-Fogg or the administrative review – suggests
it did not expect or believe it deserved.  Doing so might also
reduce the incentive for parties to participate in
administrative reviews and actively engage with the Department's
procedures by holding out the prospect of free riding on
challenges brought by others.  These considerations – both of
fairness to other parties similarly situated and of protecting
the statutory design of the review process – weigh heavily
against Snap-on's argument that it alone should benefit
retrospectively from the ruling in MacLean-Fogg IV.  Like the
other parties that failed to participate in the review or
properly challenge the all others rate, Snap-on will be subject
to the proper rate on future entries, but will not gain
disproportionately simply because its past entries were not
liquidated for other reasons.

## CONCLUSION

        Accordingly, Defendant's motion for summary judgment
is granted, and Plaintiff's motion for summary judgment is
denied.  Judgment will be entered accordingly.

        It is so ORDERED.

---

    [21] See note 15, above.

_____
/s/   Donald C. Pogue
Donald C. Pogue, Chief Judge


Dated: December 16, 2013
New York, NY